**J.B. HICKEY, Appellant,**

v.

**Sgt. REEDER; Pulaski County Jail, Little Rock, Arkansas; Deputy Marin, Jailor, Pulaski County Jail, Little Rock, Arkansas; Cpt. Carlton, Pulaski County Jail, Little Rock, Arkansas, Appellees.**

No. 92–3737.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1993.

Decided Dec. 20, 1993.

Rehearing Denied Feb. 1, 1994.

---

Howard B. Eisenberg, Little Rock, AR, argued, for appellant.

David M. Fuqua, North Little Rock, AR, argued, for appellees.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

When J.B. Hickey refused to sweep his cell at the Pulaski County Jail in Little Rock, Arkansas, jail officials shot him with a stun gun. The district court determined that this did not violate his Eighth Amendment right to be free from cruel and unusual punishment. We disagree and remand for a determination of damages.

## I. BACKGROUND

Hickey had been convicted of a crime, sentenced to a term in the state penitentiary, and was awaiting transfer. The incident began when Officer King ordered him to clean or to sweep his cell.[1] Hickey, who was locked in the cell, refused. Officer King testified that he was "kind of belligerent" and "kind of stirred up," asserting that he did not have to listen to Officer King anymore because he had just been sentenced to the Arkansas Department of Corrections. Hickey said he would "whip [Officer King's] ass" if Officer King put the cleaning materials in his cell. Officer King summoned Corporal Carlton, hoping she could persuade Hickey to sweep the cell. She arrived with another officer and entered Hickey's cell to talk to him. Hickey told Corporal Carlton that his neck hurt and that sweeping his cell was not his job anyway. Hickey remained steadfast in his refusal to sweep, using profanity and waving his hands as he spoke. Deputy Martens then joined Corporal Carlton in Hickey's cell and attempted to persuade Hickey to sweep the cell.[2] Corporal Carlton warned Hickey that if he did not voluntarily sweep his cell, the officers would make him do it. Hickey still refused to sweep. Deputy Martens also warned Hickey about the consequences of not sweeping his cell.

Corporal Carlton then summoned Sergeant Reeder, who testified that he knew Hickey to be a difficult inmate. Sergeant Reeder arrived with three other officers and the stun gun. Hickey continued his refusal despite Sergeant Reeder's order to sweep his cell, and despite Sergeant Reeder's warning that the stun gun would be used if Hickey did not comply. Hickey told Sergeant Reeder he could beat, whip, or shoot him, but he was not going to sweep the cell. Sergeant Reeder then shot Hickey with the stun gun. Hickey slumped forward. After recovering from the shock, Hickey swept his cell. He continued carrying on, cursing, and threatening to sue the officers until the last officer left.

Proceeding pro se, Hickey filed a 42 U.S.C. § 1983 action in the district court. He claimed that the use of the stun gun amounted to cruel and unusual punishment and therefore violated his Eighth Amendment rights. The parties consented to trial before a magistrate. After a hearing, the magistrate reluctantly found that the jailors' use of force was a good faith effort to maintain and restore order in the jail, and entered judgment for the defendants. Hickey appeals.

## II. DISCUSSION

Hickey makes two arguments as to why his jailors' conduct violated his Eighth Amendment rights.[3] First, he contends that the actions of the jail officials were an exaggerated and grossly disproportionate response to his misconduct. Second, he argues that the stun gun was used not to maintain discipline and restore order, but to punish him summarily for being troublesome and to make an example of him. We agree with Hickey on both counts.

Whether conduct, if done with the required culpability, is sufficiently harmful to establish an Eighth Amendment violation is an objective or legal determination which we decide de novo. *Hudson v. McMillian,* —— U.S. ——, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). If the objective element

---

1. Hickey's cell was not particularly dirty, but cleaning or sweeping cells is a daily jail routine.

2. We note that Corporal Carlton and Deputy Martens appear as Captain Carlton and Deputy Marin in the caption. We assume these are typographical errors attributable to Hickey's original pro se status.

3. Although Hickey was in jail, not prison, his status was that of a prisoner and not a pretrial detainee. Eighth Amendment analysis therefore applies to the conduct in question.

of harm is established, the actors' subjective state of mind becomes relevant and is a question of fact which we review for clear error. *Moody v. Proctor,* 986 F.2d 239, 241 (8th Cir.1993). Finally, we determine whether that state of mind is sufficiently culpable to meet the relevant Eighth Amendment standard. In excessive force cases, that standard is the unnecessary and wanton infliction of pain. *McMillian,* —— U.S. at ———— ——, 112 S.Ct. at 998–99.

### 1. Objective Harmfulness

▆▆▆ We note that every malicious push or shove does not amount to a deprivation of constitutional rights. Further, the pain maliciously inflicted must be significant for an Eighth Amendment violation to occur. *See id.* —— U.S. at ——, 112 S.Ct. at 1000. However, as noted in *McMillian,* extreme pain can be inflicted with little or no injury. *Id.* We find defendants' attempt, on appeal, to minimize the pain of being shot with a stun gun by equating it with the pain of being shocked by static electricity to be completely baseless.[4] The defendants' own testimony reveals that a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless. This is exactly the sort of torment without marks with which the Supreme Court was concerned in *McMillian,* and which, if inflicted without legitimate reason, supports the Eighth Amendment's objective component.[5] *See id.* —— U.S. at ———— ——, 112 S.Ct. at 999–1000 (punching, with no significant injury); *Jordan v. Gardner,* 986 F.2d 1521, 1523–26 (9th Cir.1993) (psychological trauma).

### 2. The Jailors' Motives for Using the Stun Gun

▆▆▆ The district court determined that Sergeant Reeder applied the stun gun to Hickey because his agitation caused the officers to fear that the situation would become violent. After examining the record, we find this conclusion to be clearly erroneous. The record is replete with statements by all those involved that the stun gun was applied to force Hickey to sweep his cell. Each defendant testified that he or she explained to Hickey that he must sweep or be shot with the stun gun. Deputy Martens testified that Hickey understood the harsh consequences if he did not follow the order to sweep his cell and that "even Inmate Hickey could figure out what was going on." Deputy Martens also testified that both Corporal Carlton and Sergeant Reeder explained to Hickey that he had only two choices, to either follow the order to sweep or to be subjected to the stun gun, and that Hickey simply refused to sweep his cell.

The district court relied on the defendants' testimony that Hickey was agitated and tense, pacing in his cell and waving his hands as he spoke, to find that use of the stun gun was a good faith action to avoid violence. However, the defendants also testified that Hickey did not make any threats to physically assault them.[6] That the defendants feared violence is also belied by their actions after the use of the stun gun. The stun gun is intended to temporarily incapacitate a threatening person, and to give the officers involved momentary advantage and a chance to neutralize the threat. When Sergeant Reeder applied the stun gun, there were six or seven officers in and around Hickey's cell, but the officers did not take advantage of Hickey's incapacitation to neutralize any perceived threat to their safety. At no time did they attempt to remove, isolate, or restrain Hickey. Both Deputy Martens and Sergeant Reeder testified that Hickey's agitation, cursing, and threats continued unabated after the stun gun was used. However, the officers did not feel threatened by or react to that post-incident agitation.

---

4. Defendants cite no authority or supporting evidence in the record for this contention.

5. We note that Hickey complains of continuing discomfort from the incident in question. The extent of any permanent or long-term injury should be considered in determining Hickey's damages.

6. Hickey's initial remark to Officer King, who is not a defendant, occurred before the other officers arrived and there is no evidence they even knew of it. Further, he had not, in fact, reacted at all when various officers opened and entered his cell.

The testimony of each defendant that the stun gun is used to ensure compliance with orders' at the Pulaski County Jail is also inconsistent with the district court's finding that the stun gun was used to avoid violence. Sergeant Reeder explained that in Arkansas it is lawful to use a stun gun to compel compliance with jail house orders. Corporal Carlton testified that disciplinary charges were an alternative to the stun gun, and were also filed against Hickey. Sergeant Reeder testified that disciplinary charges alone would not suffice to motivate Hickey since he was due to be transferred, and that there was not much else he could do to Hickey for violating the rule.

These facts leave us with the firm and definite conviction that the district court's finding that Sergeant Reeder shot Hickey because he feared Hickey would become violent was clearly erroneous. In view of all the testimony that Hickey had to sweep his cell or be shot with the stun gun, and of Sergeant Reeder's own testimony that he could do little else to Hickey for violating the rule because of the impending transfer, the finding that the stun gun was applied to Hickey because the officers feared that he might get violent is simply not sustainable. We can draw no other conclusion than that the stun gun was used on Hickey to cause enough pain and harm to force him to sweep his cell, and to make an example out of him.[7]

### 3. Wanton and Unnecessary Infliction of Pain

■ We must therefore consider whether such conduct amounts to the wanton and unnecessary infliction of pain forbidden by the Eighth Amendment. Our determination is guided by *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) and *McMillian,* —— U.S. at ——, 112 S.Ct. at 995.

■ In reviewing Eighth Amendment claims, we extend wide ranging deference to the judgment and policies of the prison offi-

cials who must maintain internal order and discipline in the prisons and who must often make snap decisions in volatile and dangerous situations. *McMillian,* —— U.S. at ——————, 112 S.Ct. at 998–99. It is obdurate, wanton or intentional inflictions of unnecessary pain, not mere inadvertence or good faith mistakes as to the amount of force reasonably called for, which violate the Eighth Amendment. *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084. Our deference, however, does not insulate actions taken in bad faith or actions that amount to a wanton infliction of pain for no legitimate reason. *Id.* at 322, 106 S.Ct. at 1085.

■ Whether pain is wantonly and unnecessarily inflicted depends, at least in part, on whether force could have plausibly been thought to be necessary to maintain order in the institution and to maintain the safety of the prison personnel or inmates. *Id.* at 320–21, 106 S.Ct. at 1084–85. Other relevant factors include: the objective need for force; the relationship between the need for force and the force used; the threat to others reasonably perceived by the officers; efforts to temper the severity of the force used; and the extent of pain or injury inflicted. *McMillian,* —— U.S. at ——, 112 S.Ct. at 999. In this case we find that there was no need for physical force to compel Hickey to sweep his cell. Hickey was not physically threatening the officers, nor was the stun gun applied for that reason. The relationship between the need for force (zero) and the force used (a painful and incapacitating shock) was excessive. And the pain inflicted was substantial.

■ Defendants argue that the need to compel Hickey to sweep the floor after he had been ordered to do so, alone, justified the use of the stun gun. They argue that the Constitution permits the use of summary force to compel compliance with any direct order given in a jail setting, and that such authority is necessary to maintain control of the institution. Appellees' Brief at 6–12.

---

7. Sergeant Reeder's testimony that he had to shoot Hickey, because other inmates had been refusing to eat and doing "different little old things" for a few days, in order to maintain control of the institution is contrary to the jail's own policy. The Pulaski County Guidelines on using the stun gun forbid using the stun gun to punish or to set an example. Offensive, rather than defensive, use of the weapon is also forbidden.

This represents a fundamental misunderstanding of the law concerning the use of summary force in prison settings. The law does not authorize the day-to-day policing of prisons by stun gun.

There is no question that prison officials may compel compliance with legitimate prison regulations. A requirement that inmates sweep their cells is clearly a legitimate regulation. Nor do we dispute that circumstances may arise where prison officials are justified in using summary physical force. These three facts, however, simply do not translate into a mandate to use summary physical force to compel compliance with all legitimate rules.

Our review of the law shows that summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy. *Whitley,* 475 U.S. at 312, 106 S.Ct. at 1078 (riot and hostage situation); *Jasper v. Thalacker,* 999 F.2d 353 (8th Cir.1993) (direct attack on officer); *Porth v. Farrier,* 934 F.2d 154 (8th Cir.1991) (attack on officers from within a locked cell); *Stenzel v. Ellis,* 916 F.2d 423 (8th Cir.1990) (refusal to comply with security regulations); *Jones v. Mabry,* 723 F.2d 590 (8th Cir.1983) (escape attempt), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); *Caldwell v. Moore,* 968 F.2d 595 (6th Cir.1992) (prolonged hysteria); *Michenfelder v. Sumner,* 860 F.2d 328 (9th Cir.1988) (refusal to submit to strip searches for weapons and contraband); *Soto v. Dickey,* 744 F.2d 1260 (7th Cir.1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1846, 85 L.Ed.2d 144 (1985) (refusal to be handcuffed when required for officers to safely enter a cell). A mutiny by groups of prisoners outside of their cells or outside of the prison walls has also justified summary actions which would otherwise have been unconstitutional. *Whitley,* 475 U.S. at 312, 106 S.Ct. at 1078; *Jones v. Mabry,* 723 F.2d at 590; *Ort v. White,* 813 F.2d 318 (11th Cir.1987).

The common thread running through all of the cases is a concern for the safety of the institution and for those within its walls. We do not attempt to limit good faith applications of force where it is reasonably thought to be necessary to maintain the order and security of a penal institution, but summary force has yet to be ratified as the *de jure* method of discipline where security concerns are not immediately implicated. *See Ort,* 813 F.2d at 324 (force in response to provocative act which due to its timing does not implicate order and security of institution is likely retaliatory rather than a good faith effort to maintain order). We have not found, and hope never to find, a case upholding the use of this type of force on a nonviolent inmate to enforce a housekeeping order.

We do not presume to tell the Pulaski County Jail how to ensure compliance with their internal housekeeping regulations, but using a stun gun is not a constitutionally permissible option. We find, as a matter of law, that the use of a stun gun to enforce the order to sweep was both an exaggerated response to Hickey's misconduct and a summary corporal punishment that violated Hickey's Eighth Amendment right to be free of cruel and unusual punishment.

## III. CONCLUSION

For the reasons stated above, we reverse the district court and remand for a determination of Hickey's damages.

BOWMAN, Circuit Judge, dissenting.

The magistrate judge accepted, as does the Court's opinion, the proposition that it is impermissible to use a stun gun to inflict punishment or to set an example for other prisoners. One might wonder whether that proposition is entirely consistent with *Hudson v. McMillian,* — U.S. —, —, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) ("the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, *or maliciously and sadistically to cause harm*") (emphasis added). Whatever else the record may show in the present case, it does not show that defendants acted maliciously and sadistically to cause harm. I do not dwell on this point, however, for here the magistrate judge, having heard the witnesses and having assessed their credibility, found that the stun gun had been used on Hickey in a good-faith effort to maintain discipline and security. Having reviewed the record, and giving due deference to the fact that the magistrate judge was in an infinitely better position than is this Court to evaluate credibility and motive, I cannot

say that the magistrate judge's finding is clearly erroneous.

In addition, I believe the Court's opinion, *ante* at 757, considerably overstates what the record shows concerning the pain of being shot by a stun gun. The magistrate judge did not make an express finding on that issue, although a rejection of Hickey's claim of extreme pain may be implicit in the finding of the magistrate judge that the amount of force used to prevent the situation from deteriorating into violence was "minimal." Memorandum Opinion and Order at 3. Two of the officers, Carlton and Reeder, testified that they had personally experienced the effects of the gun. Carlton said it was painful. She added, "Well, to me it is. I can't stand pain, but it's a powerful blow." Transcript of Evidentiary Hearing at 48. Reeder testified that the gun causes no pain, but "incapacitates the person and basically scares them, and it gives you momentary advantage." *Id.* at 58. In my view, this record falls short of showing that Hickey suffered a harm sufficiently serious to be cognizable under the Eighth Amendment.

I would affirm the District Court, and therefore I respectfully dissent.