**Trini DAVIS, Plaintiff,**

v.

**Lt. LESTER, et al., Defendants.**

**No. Civ.A. 7:00–CV–00737.**

United States District Court,
W.D. Virginia,
Roanoke Division.

July 26, 2001.

Trini Davis, Somers, CT, pro se.

Banci Enga Tewolde, Susan Foster Barr, Office of the Attorney General, Richmond, VA, for defendants.

### MEMORANDUM OPINION

TURK, District Judge.

Plaintiff Trini Davis, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that the defendants, officers at Wallens Ridge State Prison ("Wallens Ridge"), used excessive force against him because of his race and in retaliation for his filing grievances when they placed him in 5-point restraints for 48 hours, purportedly for kicking his door. The defendants named in the complaint, Lt. Lester and Officer Kilgore, have filed a motion to dismiss to which plaintiff has responded, making the matter ripe for the court's consideration. Plaintiff has also filed a motion to amend, bringing additional claims and adding new defendants. Upon review of the record, the court grants the motion to amend and denies the motion to dismiss except as to one claim. The court also finds that the majority of the new claims raised in the motion to amend must be dismissed, pursuant to 28 U.S.C. § 1915A, for failure to state a claim.

I.

Davis alleges the following sequence of facts in his complaint as amended relevant

to the motion to dismiss.[1] On April 16, 2000, he was watching television in his cell at about 10:45 p.m., Lt. Lester came to Davis' cell door and told him that he was to be put in 5–point restraints because Lester had seen him kicking his cell door. Lester also said that the 5–point restraints would teach Davis not to file complaints against his officers.[2] Lester returned to Davis' cell a few minutes later with an enforce team, which escorted Davis to a stripped cell and placed him in the 5–point restraints. Davis told the officers that the restraints were too tight around his ankles, but Lester told him to be quiet and did not adjust the restraints. When the officers left the cell and closed the door, Davis could see a paper hung on the door with a drawing of a hangman's noose on it and the words "coming soon." Kilgore visited Davis' cell a few hours later during his morning shift and told Davis, "We're going to hang you, boy. That picture should give you something to think about." When officers came in to give Davis his dinner, Officer Kilgore showed Sgt. Kendrick the drawing, and Kendrick removed it from the door.

Davis remained in 5–point restraints for 48 hours, restrained by cuffs on wrists and ankles to the bed posts and by a strap across his chest. He urinated on himself about a dozen times and did not have opportunity to wash himself.[3] He also suffered chills and muscle cramps from the combination of the air conditioning in the cell being too high and being wet from lying in his own urine in the same position for so many hours. He suffered pain in his ankles from the restraints being too tight and still has scars on his ankles and numbness in his left foot. No officer ever charged him with a disciplinary violation for conduct occurring before he was placed in the restraints, so he never had an opportunity to challenge his treatment during an official hearing. Davis asserts that defendants' alleged actions violated his rights under the First Amendment (retaliation for his exercise of the right to access the courts), the Eighth Amendment, and the due process and equal protection clauses of the Fourteenth Amendment.[4]

## II.

In an action brought pursuant to 42 U.S.C. § 1983, a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations in the complaint should be construed in the light most favorable to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ In their motion to dismiss, defendants Lester and Kilgore argue that Davis'

---

1. Davis also raises additional allegations in his response to the motion to dismiss, which the court will construe and grant as an additional motion to amend.

2. Davis had filed a grievance a few weeks earlier against Officer Kilgore. The grievance alleged that when Davis asked Kilgore to notify medical that Davis was suffering chest pains, Kilgore told Davis that it was not his job to call medical for "niggers." Shortly after Davis asked Kilgore for help and was refused, other officers found him suffering an emergency episode of chest pains.

3. He admits that officers did let him up to use the bathroom and eat meals, but alleges that he went for four to eight hours between these breaks.

4. In his motion to amend, Davis adds claims concerning an alleged denial of adequate medical treatment.

allegations fail to state any constitutional claim and should be dismissed under Rule 12(b)(6) accordingly. If the court had found this to be true, the court would have dismissed Davis' entire complaint summarily upon screening the complaint, pursuant to 28 U.S.C. § 1915A(b)(1), before ordering that it be filed and served. Accordingly, except as to Davis' retaliation claim,[5] the court does not find that defendants' motion to dismiss for failure to state a constitutional claim is well taken, as the motion fails to note any allegation or evidence in the record[6] that the court has not already considered in screening the complaint under § 1915A. Defendants also assert the affirmative defense of qualified immunity against Davis' claims for monetary damages. For the following reasons, the court also denies their motion on this ground.

State officials are entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated plaintiff's clearly established constitutional right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To address a claim of qualified immunity, the court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). *See also Saucier v. Katz,* 531 U.S. 991, 121 S.Ct. 2151, 2159, 150 L.Ed.2d 272 (2001). "Clearly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Wilson v. Layne,* 526 U.S. 603, 614–15, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Saucier,* 121 S.Ct. at 2159–60 (granting qualified immunity upon finding "substantial grounds for the officer to have concluded he had legitimate justification under the law for acting as he did" and upon finding no "case demonstrating a clearly established rule prohibiting the officer from acting as he did").

## A. Excessive Force

■ Davis first alleges that use of 5–point restraints under the circumstances he alleges was cruel and unusual punish-

---

5. Davis alleges that the officers placed him in 5–point restraints in retaliation for a previously filed grievance. Although the officers' alleged retaliatory motive may be evidence relevant to Davis' Eighth Amendment and race discrimination claims, his allegations fail to state any separate claim against them for retaliation. As he fails to demonstrate any manner in which his ability to exercise a specific constitutional right was chilled by defendants' actions, he fails to state a § 1983 claim of retaliation. *See Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994) (inmates have no constitutional right to grievance procedure and conclusory allegations of retaliation fail to state § 1983 claim). Accordingly, as to the separate claim of retaliation, the court will grant the motion to dismiss.

6. The court finds no merit to defendants assertion that Davis' own evidence includes prison officials' responses to the grievances that Davis filed with his complaint, as required pursuant to 42 U.S.C. § 1997e(a). For example, the grievance responses indicate that officials placed Davis in restraints not for punishment, but for safety and security reasons because he had been repeatedly kicking his door. These unsworn grievance responses cannot be considered evidence from either party as to what actually happened or why. At the most, they are evidence as to the answers that Davis received to his grievances.

ment in violation of the Eighth Amendment. The Eighth Amendment prohibits the "the unnecessary and wanton infliction of pain" by a prison guard upon an inmate. *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). A claim that guards used excessive force against an inmate entails a dual inquiry regarding (1) the objective nature of the force used and the resulting harm and (2) the subjective intent of the officers. *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor,* 25 F.3d 1259, 1263 (4th Cir.1994). Thus, absent the most extraordinary circumstances, an inmate cannot prevail on an excessive force claim if he proves no more than *de minimis* injury. *Id.* The Fourth Circuit has defined two types of extraordinary circumstances that give rise to an excessive force claim where plaintiff suffered *de minimis* injury: when the "force used [is] of a sort repugnant to the conscience of mankind ... or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury." *Id.* at 1264 n. 4. As "[m]ankind has devised some tortures that leave no lasting physical evidence of injury," "courts should be wary of finding uses of force that inflict 'merely' pain but not injury to be *de minimis,* and therefore beyond requiring justification under the Eighth Amendment." *Williams v. Benjamin,* 77 F.3d 756, 762 and 762 n. 2 (4th Cir.1996) (involving inmate who spent 8 hours in 4–point restraints after being sprayed with mace).

■ The key subjective inquiry in analyzing an excessive force claim is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7, 112 S.Ct. 995. In making this determination, the court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." *Id.; see also Hickey v. Reeder,* 12 F.3d 754, 759 (8th Cir.1993) (use of stun gun to force prisoner to comply with rule requiring him to clean his cell, without immediate implication of security concerns, was wanton infliction of pain).

■ Defendants assert that Davis' allegations fail to demonstrate that he suffered more than *de minimis* injury as a result of confinement in the restraints. Defendants also assert that Davis was placed in restraints for his own safety and institutional security after he refused to stop kicking his door and, therefore, cannot show use of the restraints constituted the wanton infliction of pain. The court finds neither of these characterizations of Davis' claims supports a finding of qualified immunity for defendants for failure to state a constitutional claim.

First, defendants do not cite, and the court has not found, a single case in which a court held the use of 4– or 5–point restraints to be both *de minimis* injury and *de minimis* force, as defendants argue, and dismissed the case under Rule 12(b)(6) on that basis alone, without requiring further development of plaintiff's claims. In the cases defendants cite, courts found the use of 4–point restraints to be constitutional only after extensive development of the record and in-depth analysis of the circumstances offered by prison officials to justify the application of the restraints in each case, such as the inmate's history of violent and disruptive behavior and the repeated attempts to control him through the use of other disciplin-

ary measures. *See LeMaire v. Maass,* 12 F.3d 1444 (9th Cir.1993); *Williams v. Burton,* 943 F.2d 1572 (11th Cir.1991); *Stenzel v. Ellis,* 916 F.2d 423 (8th Cir.1990); *Bruscino v. Carlson,* 854 F.2d 162 (7th Cir. 1988). Moreover, the Fourth Circuit has recognized in *dicta* that application of 4–point restraints for 8 hours likely constitutes more than *de minimis* injury. *See Benjamin,* 77 F.3d at 762 (noting apparent wisdom of defendant officers' decision not to contend plaintiff's allegations failed to satisfy objective component under *McMillian* ).

Davis alleges that he was restrained for 48 hours with all four of his limbs and his chest immobilized, lying on his back in his own urine in a cold cell, and that he suffered chills, muscle spasms, permanent scars to his ankles, and continuing numbness in his left foot, all for no other reason than his race and his complaints about previous expressions of racism. These allegations describe psychological and physical torture and humiliation, entirely unrelated to Davis' alleged conduct and unnecessary to restore or preserve safety, order or security. Taking these allegations in the light most favorable to plaintiff, the court finds that use of 5–point restraints in the manner and for the length of time Davis alleges was "repugnant to the conscience of mankind," thus satisfying the objective component of his Eighth Amendment claim regardless of whether Davis suffered no severe or disabling injuries from the application of the restraints. *Norman,* 25 F.3d at 1264 n. 4.

The court also finds that, taking Davis' allegations in the light most favorable to him, he has alleged facts stating a claim that defendants subjected him to 5–point restraints for 48 hours solely for the malicious and sadistic purpose of causing him harm, in violation of the Eighth Amendment. Davis alleges no facts suggesting that defendants applied the restraints for his own safety or for the security of the institution. He alleges that at the time defendants took him from his cell to be restrained, he was sitting, watching television. Moreover, even if Davis was repeatedly kicking his door, as defendants assert based on the unsworn grievance responses, absent detailed evidence concerning other disciplinary measures attempted first and the inmate's continued misbehavior while in the restraints, the court must infer that 48 hours in 5–point restraints was an extreme response, imposed upon Davis solely to punish him rather than to serve any legitimate security or safety purpose. *See Benjamin,* 77 F.3d at 765 (noting that after restraints were imposed and disturbance ended, "unnecessary infliction of continued pain throughout a prolonged time period [8 hours in 4–point restraints] supports an inference that the guards were acting to punish rather than to quell the disturbance."); *United States v. Cobb,* 905 F.2d 784, 789 (4th Cir.1990) ("[P]unitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective" (quotations omitted)). Based on the foregoing, the court finds that Davis has alleged facts stating a constitutional claim of excessive force and thus satisfied the first prong of the qualified immunity analysis. *Wilson,* 526 U.S. at 614–15, 119 S.Ct. 1692.

So saying, the court moves to the next prong of the analysis: whether the "contours" of the right were sufficiently clear at the time of the alleged violations such that a reasonable official would have understood that his actions violated that right. *Id.* The court has not found a case from the United States Supreme Court or the Fourth Circuit expressly holding that use of 5–point restraints as alleged by

Davis violates the Eighth Amendment. However, no such express rule is necessary to deny qualified immunity. *Id.* The standards in *McMillian, Norman,* and *Benjamin* were clearly established at the time of the alleged violations. In *Benjamin,* the Fourth Circuit repeatedly questioned the use of 4–point restraints for an 8–hour period after a riot and found summary judgment inappropriate absent additional development of the facts regarding the justification for such prolonged use of these restraints. *See, generally,* 77 F.3d at 762–68. In the face of this case law, the court cannot find that the defendants had any substantial grounds upon which to conclude they had legitimate justification under the law for acting as they allegedly did. *Saucier, supra.* Accordingly, the court denies the motion to dismiss Davis' excessive force claims on the ground of qualified immunity.

**B. Race Discrimination**

■ Davis' next claim alleges that defendants applied the restraints as they did because of his race. Defendants assert that Davis' allegations fail to state any constitutional claim of race discrimination and that they are entitled to qualified immunity as to this claim. The court cannot agree. Prison inmates are protected under the Fourteenth Amendment against invidious discrimination on the basis of race under the Equal Protection Clause of the Fourteenth Amendment. *See Lee v. Washington,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). In order to raise a valid equal protection claim, a plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.2001). *See also Moss v. Clark,* 886 F.2d 686 (4th Cir.1989) (officials may

treat similarly situated inmates differently only if basis for different treatment is rationally related to legitimate interest of the state). Davis alleges that officers made references to race, and to his grievances about previous racial comments, during the period when they were taking him to the strip cell and putting him in restraints and that they left the offensive drawing in his cell and made references to it, apparently implying that he would be lynched. He also alleges that he was not making any disturbance that justified his being restrained. Taking these allegations in the light most favorable to Davis, the court finds that he has alleged facts stating a claim that the challenged actions of Lester and Kilgore resulted from a discriminatory motive. While he has not yet alleged specific facts concerning whether the defendants treated similarly situated, white inmates differently, the court cannot find at this point in the litigation that he would be unable to prove a set of facts to support this element of his claim, with the benefit of discovery. *Conley,* 355 U.S. at 45, 78 S.Ct. 99. The constitutional guarantee against race discrimination was well established at the time of the alleged events, and the court finds no substantial ground upon which defendants could have believed they had legitimate justification under the law for acting as they allegedly did, namely, punishing Davis because of his race. Accordingly, defendants have not established that they are entitled to qualified immunity as to Davis' race discrimination claims against Lester and Kilgore, and the court denies the motion to dismiss as to these claims.

**C. Procedural Due Process**

■ In the state prison context, an inmate has a state-created liberty interest only to "freedom from restraint which,

while not exceeding the sentence in such an unexpected manner as to give rise to [a substantive due process claim], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). On its face, the application of 5–point restraints for 48 hours in the manner Davis alleges imposes an "atypical and significant hardship on the inmate" when compared to the expected conditions of prison life in a civilized country, absent detailed evidence justifying such extreme punishment. Davis does not allege receiving any notice that certain behavior would result in his confinement in restraints for 48 hours or receiving any opportunity to be heard, before, during or after application of the restraints. *See Benjamin*, 77 F.3d at 768–70 (finding "forceful argument" that 8–hour confinement in 4–point restraints posed atypical and significant hardship and dismissing procedural due process claim only because post-riot circumstances did not allow for pre-deprivation hearing and inmate did not show inadequacy of post-deprivation remedies).[7] Accordingly, the court finds that Davis' allegations state a claim that he was deprived of liberty without due process. *Sandin* and *Benjamin* were well established constitutional standards at the time of the alleged offenses, and defendants have not offered any evidence to support a finding that they had substantial ground upon which to believe they had legitimate justification under the law for acting as they allegedly did, placing Davis in atypical restraints without any procedural protections for 48 hours. Accordingly, the court cannot find that defendants are entitled to qualified immunity as to this claim and denies the motion to dismiss Davis' procedural due process claim against Lester and Kilgore, related to the use of 5–point restraints.

### III.

■ The court finds that several of the claims Davis raises in his amended complaint must be dismissed without prejudice, pursuant to pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim. First, Davis amends his complaint to raise his excessive force, equal protection and due process claims against Sgt. Kendrick, in addition to Lester and Kilgore. However, Davis does not allege any specific facts concerning Kendrick's involvement in causing Davis to be confined in the restraints for 48 hours. The only alleged involvement that Kendrick had was to remove the offensive drawing from the back of the cell door. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). As Davis fails to allege facts indicating how Kendrick personally acted in violation of Davis' rights, the court will dismiss all claims against Kendrick without prejudice, pursuant to § 1915(e)(2).

■ Next, Davis amends to add claims against Warden S.K. Young and Assistant Warden Harvey. He alleges

---

**7.** The Fourth Circuit in *Benjamin* noted with concern that "[s]imply because the initial application of the restraints occurred soon after a disturbance does not mean that four-point restraints may be imposed indefinitely." 77 F.3d at 770 n. 10. The court went on to opine that "[at some point in time, an inmate so restrained in 4–point restraints for only 8 hours in the *Benjamin* case] would be entitled to some procedural protection to ensure that his liberty interest was not being arbitrarily and capriciously denied." *Id.*

that he notified these administrators that Kilgore had treated him badly, specifically, that Kilgore had threatened him, failed to notify medical when Davis reported having chest pains, called Davis a nigger, and denied him legal calls, recreation and showers on occasion. Davis alleges that Young failed to respond regarding Davis' complaints and that Harvey told him to report problems to the building supervisor, a remedy Davis tried without result. An official cannot be held automatically liable for violations of plaintiff's rights through the actions of subordinate officials; the doctrine of respondeat superior is inapplicable to § 1983 actions. *Fisher v. Washington Metro. Area Transit Auth.,* 690 F.2d 1133, 1142–43 (4th Cir.1982). A supervisory official can be liable for damages under § 1983:(1) if the conduct by subordinate employees which directly caused the deprivation was undertaken to effectuate an official policy or practice for which the official was responsible, *Id.,* or (2) if the supervisory official was aware of a pervasive, unreasonable risk of harm to plaintiff from a specified source and failed to take corrective action himself, out of his own deliberate indifference or his tacit authorization of inaction by subordinates. *Slakan v. Porter,* 737 F.2d 368 (4th Cir.1984). Under these principles, Davis has not alleged specific facts against Young and Harvey to state claims against them under § 1983. First, he fails to allege or demonstrate that Kilgore's alleged misdeeds before April 16, 2001, violated any constitutional right. Second, he fails to allege that his communications to Young and Harvey before the April 16, 2001, 5–point restraints incident put them on specific notice of any risk that Kilgore would cause Davis harm. Third, Davis fails to allege that in placing him in restraints on April 16, 2001, Kilgore acted to effectuate any policy or practice implemented or condoned by Young or Harvey. Accordingly,

Davis fails to allege facts stating any claim against these defendants. The court will dismiss without prejudice all claims against Young and Harvey, pursuant to § 1915(e)(2).

Davis also amended his complaint to add a claim against Investigator Hutchinson concerning the April 16, 2001, incident. Davis alleges that on two occasions, he wrote to the investigator about the incident and asked what had happened to the hangman picture taken off his cell door. Hutchinson informed him that the picture had been destroyed and never interviewed Davis about the incident. Again, Davis fails to allege facts indicating that Hutchinson had any personal involvement in the alleged violations: use of excessive force, race discrimination, and violations of due process. Davis fails to allege any other ground upon which Hutchinson's alleged actions violated his constitutional rights, and the court finds none. Accordingly, the court dismisses all claims against Hutchinson without prejudice, pursuant to § 1915(e)(2).

Davis also amended his complaint to name Major Yates, Chief of Security at Wallens Ridge, as a defendant. With his response to defendants' motion to dismiss, Davis submits his June 4, 2000, request for inmate services about the use of 5–point restraints as punishment without any provision for due process. To this complaint, Yates responded, "The 5–point restraints are used to ensure the safety and security of the institution, *NOT* a disciplinary process." Liberally construing Davis' submissions, the court finds that his amended complaint alleges facts stating a possible claim that Yates approved the policy of applying 5–point restraints without predeprivation or postdeprivation procedural protections. *Sandin,* 515 U.S. at 484, 115 S.Ct. 2293; *Benjamin,* 77 F.3d at 768–70. The court will direct the clerk to attempt

service of process in the usual manner upon this newly named defendant.

■ Finally, Davis alleges that newly named defendant, Dr. Warren, denied him adequate medical treatment for the injuries he suffered to his ankles as a result of his confinement in 5–point restraints on April 16, 2000. He alleges that Dr. Warren examined his ankles on May 17, 2000, after Davis' several previous, unsuccessful requests for medical attention. Dr. Warren allegedly refused to acknowledge that Davis had suffered scars from the restraints cutting into his skin. Davis also told Warren about the numbness in his foot, but Warren allegedly failed to make any notation in Davis' file that he had suffered injury from the restraints. Davis kept asking for attention regarding the numbness. Another doctor finally examined him, saw the scars and told Davis that the restraints had been too tight, had cut off his circulation and caused the numbness. This doctor prescribed some medication, which did not help.

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Sheldon v. C/O Pezley*, 49 F.3d 1312, 1316 (8th Cir.1995). The subjective component is met if a prison official "knows of and disregards an excessive risk

to inmate health or safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. *See Johnson v. Quinones*, 145 F.3d 164, 168–69 (4th Cir.1998) (because evidence did not show that doctors knew about inmate's pituitary gland tumor, failure to diagnose and treat it did not state Eighth Amendment claim even though inmate ultimately went blind). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances rising to the level of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir.1975). Moreover, mere malpractice does not state a federal claim, *Estelle*, 429 U.S. at 105–106, 97 S.Ct. 285, nor does mere negligence in diagnosis. *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986).

Under these principles, the court cannot find that Davis has alleged facts stating any claim against Dr. Warren under § 1983. First, Davis has no constitutional right for the doctor to record in his medical notes every scar that the doctor may observe on his body, even when that information may be relevant to a lawsuit. His constitutional right is to adequate treatment. Second, Davis' allegations state no more than a claim of disagreement between doctor and patient as to the proper course of action regarding his injuries. Davis believed some treatment was warranted for his ankles and foot in May 2000, but the doctor did not agree. Even if Davis is right and some treatment was warranted, as the later doctor decided, such circumstances give rise, at the most, to a claim of negligent diagnosis by Dr. Warren, not an Eighth Amendment claim. Davis simply has not demonstrated that Warren knew of specific treatment neces-

sary for the condition of Davis' ankles in mid-May, but deliberately chose to deny him that treatment and ignore his needs. *Farmer, supra.* Davis also has not alleged facts indicating that Dr. Warren had any responsibility for the delay in his receiving an examination by a doctor or that the delay aggravated his injuries. As the court cannot find that any of Davis' allegations state any constitutional claim against Dr. Warren, the court dismisses all claims against this defendant without prejudice, pursuant to § 1915(e)(2). An appropriate order shall be issued this day.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendant(s).

### ORDER

In accordance with the accompanying memorandum opinion, it is hereby

### ADJUDGED AND ORDERED

as follows:

(1) Plaintiff's motion to amend shall be and is hereby **GRANTED** and his complaint is supplemented as stated in the motion to amend and in his response to the defendants' motion to dismiss.

(2) As to plaintiff's retaliation claims, defendants' motion to dismiss shall be and is hereby **GRANTED,** but as to plaintiff's excessive force, race discrimination and procedural due process claims against Defendants Lester and Kilgore, the motion to dismiss shall be and hereby is **DENIED** and these defendants are hereby **DIRECTED** to submit an answer and any additional dispositive motion within thirty (30) days from the entry of this order.

(3) The clerk is hereby **DIRECTED** to attempt service of process in the usual manner upon the newly named defendant, Major Yates.

(4) Plaintiff's claims against the following defendants shall be and hereby are **DISMISSED** without prejudice, pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim: Warden S.K. Young, Institutional Investigator Hutchinson, Assistant Warden Harvey, Sgt. Kendrick and Dr. Warren, and the parties are hereby notified that these individuals are no longer considered parties to the action.

The Clerk is directed to send certified copies of this order and the accompanying memorandum opinion to plaintiff and to counsel of record for the defendant(s).