# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2742

_____

Eugene Carl De Boise, Sr.; T.E.R., a minor child by his next friend, Anneliese
Hubbard; A.N.D., a minor child by her next friend Sheena Marie Perry

*Plaintiffs - Appellants*

v.

Taser International, Inc.

*Defendant*

St. Louis County, Missouri; Bret Lively, Police Officer, in his individual capacity;
Joseph Percich, Police Officer, in his individual capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 17, 2014
Filed: July 28, 2014

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Appellants, the father and minor children of the deceased Samuel De Boise, brought a 42 U.S.C. § 1983 action against Officers Bret Lively and Joseph Percich of the St. Louis County Police Department and a claim under the Americans with Disabilities Act (ADA) against St. Louis County, Missouri.[1]  Officers Lively and Percich moved for summary judgment on the basis of qualified immunity, and St. Louis County moved for summary judgment, claiming no ADA violation occurred due to exigent and unexpected circumstances.  The district court[2] granted both motions, and we affirm.

I.

De Boise suffered from schizophrenia, which caused him to experience serious psychotic episodes.  On the evening of July 7, 2008, De Boise became delusional and left his home naked.  The next morning, neighbors reported seeing De Boise roaming the neighborhood, beating houses with a stick, and claiming to be God.  That night, De Boise returned home still naked and delusional.  He continued to claim he was God, demanded that his mother worship him, and held her head down to the floor.  Eventually, De Boise headed to the back of the home, and his mother left the house and called 911 from a neighbor's phone.  The St. Louis Police department dispatched officers describing the call as a "violent OBS," meaning that the subject was emotionally disturbed, acted violently, or used physical force against people or property.

---

[1]Appellants brought other claims against the Appellees that were dismissed voluntarily.

[2]The Honorable Terry I. Alderman, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Officer Arthur Williams arrived on the scene first, and De Boise's mother immediately informed him of her son's behavior and physical aggression toward her.[3] Officer Williams heard a noise coming from the house and then observed De Boise exiting the home naked and claiming to be God. De Boise suddenly re-entered the house, tearing down the screen door upon his entry. Additional officers were called to the scene along with an ambulance unit.

While De Boise was still in the home, five more officers arrived on the scene: Officers Joseph Percich, Bret Lively, Mike Kaemmerer, Jacob Maechling, and Chris Money. De Boise's mother informed the officers that she had a firearm in the house and that De Boise was schizophrenic. Officer Percich heard extremely loud noises coming from the home, including screaming, glass breaking, and heavy furniture being thrown. De Boise then exited the house still naked and referring to himself as God. Officer Percich took command of the scene and aimed his taser gun at De Boise as he exited the home. Officer Maechling instructed De Boise to walk out on the grass and lie face down on the ground. De Boise complied. Officer Percich holstered his taser and began to approach De Boise to handcuff him. De Boise immediately jumped to his feet, clenching his fist, and glaring in Officer Percich's direction. Officer Maechling continued to instruct De Boise to lie on the grass, but De Boise did not comply. Believing that De Boise posed a threat to the officers, Officer Percich instructed De Boise several times to lie down. When De Boise refused, Officer Percich yelled out "taser, taser, taser" and fired his Taser Model X-26 ECD in barb mode. The darts penetrated De Boise's chest and the taser delivered a five-second electrical shock. De Boise immediately fell to the ground on his back with his arms and fists clenched to his chest.

---

[3]While the parties dispute whether De Boise's mother informed the officers that her son had tried to kill her, it is undisputed the officers were informed De Boise had terrified his mother and held his mother's head to the floor.

When an X-26 Taser trigger is pulled, two darts with wires attached are deployed toward the target. Once the darts make contact, an electrical circuit is completed and the device automatically cycles five seconds of electrical current, immobilizing the subject. J.A. 440.

After the first taser discharge, De Boise continued to struggle and ignore the officers' demands to remain on the ground, and Officer Percich followed with a second five-second cycle.[4] After the first two cycles, Officer Percich did not believe the officers could safely handcuff De Boise due to the position of his hands and taser wires carrying the electrical charge. De Boise stood up again despite the demands, and Officer Percich applied a third cycle, causing De Boise to fall to the ground face down. Officers Percich and Money approached to handcuff De Boise when De Boise rose to his knees and swung his arms around. Officer Percich then applied a fourth taser cycle and De Boise fell to the ground with the wires tangled around his legs. De Boise attempted to rise again, and Officer Percich delivered two more taser cycles, the last of which appeared to be ineffective. De Boise arose to his feet and walked toward the officers, and Officer Lively fired his taser, subjecting De Boise to another five-second cycle. De Boise fell to the ground but rose to his feet again, this time assuming a stance as if he were getting ready to charge or attempt to run.

Officer Lively delivered another taser cycle, after which Officers Percich and Money attempted to handcuff De Boise. De Boise kicked at the officers, and Officer Lively took the cartridge out of his taser and applied the taser on De Boise's leg twice, this time in drive stun mode.[5] Officers Percich and Money were then able to

_____

[4]Importantly, Appellants do not dispute the reasonableness of the initial two tasings.

[5]Deploying the taser in drive stun mode means that an officer removes the cartridge from the taser and applies the taser so as to make direct contact with the subject's body. When the taser is in drive stun mode, it only causes discomfort and

-4-

hold De Boise's arms and shoulders to the ground while the paramedic and EMT injected De Boise with a sedative. While being transferred to a gurney, De Boise went into cardiac arrest. Attempts to revive De Boise were unsuccessful, and he was pronounced dead upon his arrival at the hospital.

Appellants filed suit, alleging excessive force against Officers Lively and Percich under 42 U.S.C. § 1983 and violations of the ADA against St. Louis County. Officers Percich and Lively moved for summary judgment on the excessive-force claim based on qualified immunity. St. Louis County also moved for summary judgment on the ADA violation claim. The district court granted the officers' motion, finding the use of force objectively reasonable in light of the fact that De Boise repeatedly failed to comply with the officers' commands to submit and continued to actively resist arrest. The court found it undisputed that De Boise continued to get up despite the officers' instructions to lie down, walked toward the officers, and kicked and flailed his arms when the officers attempted to arrest him. The court further determined that even if the officers' actions amounted to excessive force in violation De Boise's Fourth Amendment rights, the law at the time of the incident would not have placed a reasonable officer on notice that multiple tasings under the circumstances violated a clearly established right.

The district court also granted St. Louis County's motion for summary judgment, finding that no violation of the ADA occurred because the officers were faced with unexpected and exigent circumstances to which no reasonable accommodations could be made until after the scene was safely secured. This appeal followed.

---

does not incapacitate the subject.

## II.

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009). We review a district court's order granting summary judgment de novo, viewing the facts in a light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences. Carpenter v. Gage, 686 F.3d 644, 648 (8th Cir. 2012), cert. denied, 133 S. Ct. 955 (2013).

To determine the question of qualified immunity, we engage in the following two-part inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Brown, 574 F.3d at 496. Courts have discretion to decide which part of the inquiry to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, we begin with second inquiry. Though the outcome of this encounter was tragic, and even if the reasonableness of the officers' actions was questionable, Appellants cannot defeat the officers' defense of qualified immunity unless they are able to show that a reasonable officer would have been on notice that the officers' conduct violated a clearly established right.

"When determining whether an action was a clearly established constitutional violation, we look to the state of the law at the time of the incident," Shekleton v. Eichenberger, 677 F.3d 361, 366 (8th Cir. 2012); the relevant time here being July 8, 2008. The pertinent inquiry is "'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 367 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). Particularly, the contours of De Boise's right to be free from excessive force must be so sufficiently clear that a reasonable officer

would know that the multiple tasings under the circumstances were a violation of that right. See Roberts v. City of Omaha, 723 F.3d 966, 972 (8th Cir. 2013).

Although we have determined that non-violent, non-fleeing subjects have a clearly established right to be free from the use of tasers, see Brown, 574 F.3d at 499-500, we have yet to determine whether a violent subject, acting aggressively toward officers, has a clearly established right to be free from multiple tasings. See Clark v. Ware, 873 F. Supp. 2d 1117, 1123 (E.D. Mo. 2012) (holding that the court could not determine as a matter of law that the repeated use of a taser on a subject that was physically resisting the police violated a clearly established right as of November 2009). Indeed, in 2008, case law related to the use of tasers was still developing. See McKenney v. Harrison, 635 F. 3d 354, 361-62 (8th Cir. 2011) (Murphy, J. concurring). And, Appellants point to no previous case that could be said to have clearly established the unconstitutionality of the officers' actions here. Accordingly, the state of the law would not have placed "an officer on notice that he must limit the use of his taser in certain circumstances, even though the subject continues to struggle and resist." Clark, 873 F. Supp. 2d at 1122.

Appellants are correct that the particular action in question need not have been previously held unlawful in order for a court to determine that a government official has indeed violated a clearly established right. See Hope v. Pelzer, 536 U.S. 730, 741 (2002) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." (second alteration in original) (internal quotation marks omitted)). In support of their claim, Appellants rely on Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009). In Oliver, the Eleventh Circuit concluded that the multiple tasings of a mentally ill subject was excessive force and violated the subject's clearly established right. 586 F.3d at 908. Although the court acknowledged that there was no prior decision in which a court had determined such acts violated a clearly established right, the court, nonetheless,

-7-

reasoned the right was clearly established because the subject was tased multiple times without warning, he was not suspected of any crime, did not act belligerent or aggressively, and had complied with most of the officers' commands. Id. at 907-08. The court determined, based on the facts alone, no reasonable officer would have believed that the repeated tasings were constitutionally permissible under the circumstances. Id. at 908.

Although Oliver and the case before us both involve the tasing of an emotionally disturbed individual, the facts of the two cases are not sufficiently aligned. Similar to Oliver, De Boise suffered from a mental illness of which the officers were aware. However, unlike in Oliver, the officers in this case observed De Boise aggressively approaching one of the officers, his continued noncompliance with the officers' instructions to lie on the ground, and his violent and aggressive behavior, which included kicking and swinging his arms at the officers once they approached to subdue him. These important distinctions lead us to conclude that no reasonable officer, observing De Boise's behavior, would have understood the actions taken to be so disproportionate and unnecessary as to amount to a violation of De Boise's rights. Accordingly, Oliver does not support the Appellants' argument that the right in this case was clearly established.[6]

---

[6]The dissent cites Hickey v. Reeder, 12 F.3d 754 (8th Cir. 1993) to support its contention that it was unreasonable for the officers, in July 2008, to have believed their actions were unlawful. We find this case and the dissent's application of it unpersuasive for three reasons. First, the question before us is whether the application of multiple tasings on a subject actively resisting arrest in the circumstances faced by the officers amounts to a clear violation of his constitutional rights, not whether the *initial* use of a taser/stun gun on a nonviolent inmate to enforce a housekeeping order is unconstitutional. See Hickey, 12 F.3d at 758-59 (determining whether the type of force used was an unnecessary and wanton infliction of pain in violation of the Eighth Amendment). Here, the Appellants do not dispute the initial taser application but take issue with the subsequent taser shocks

Appellants also claim that the officers' training placed them on notice that their actions violated a clearly established right. We disagree. Certainly, the officers training manual instructed that "[Emotionally disturbed persons] . . . may not comply with verbal commands following the TASER cycle" and were informed that "[e]ach cycle should be used as a 'window of opportunity' to attempt to establish control/cuff while the subject is affected by the TASER cycle." However, the training manual further instructed officers to "[m]ove in and control the subject while TASER device is cycling and the subject is incapacitated when it is reasonably safe to do so." Officer Percich testified that, due to the placement of De Boise's hands and the placement of the taser wires, it was not safe to handcuff De Boise after the initial tasings. We are not persuaded that a reasonable officer, having the same training,

administered to De Boise. Appellants' Br. 21-22. Second, in Hickey, we gave significant weight to the fact that the inmate was nonviolent and tased due to his failure to comply with a housekeeping order to sweep his cell. Hickey, 12 F.3d at 758-59. Here, officers observed De Boise's irrational behavior and repeated acts of aggression towards the officers, actions absent from the circumstances in Hickey. Finally, in Hickey, the fact that the officers failed to "take advantage of [the inmate's] incapacitation to neutralize any perceived theat to their safety" was relevant to the officer's subjective state of mind in using the stun gun. Id. at 757. That is, we noted that the lack of any attempt to "remove, isolate, or restrain" the inmate demonstrated that the motive in using the stun gun was not based on any fear for the safety of the officers. Id. at 757-58. Here, the motive for using the taser is not at issue. See Graham v. Connor, 490 U.S. 386, 397-98 (1989) (acknowledging the absence of a subjective state of mind inquiry under Fourth Amendment claims). Moreover the officers, after having made a few attempts, did successfully subdue De Boise when it was safe to do so, though we recognize that officers may not always have the opportunity to subdue a subject hands-on, particularly when such action poses a risk to the safety of the officers on the scene and when split-second decisions must be made. See McKenney v. Harrison, 635 F.3d 354, 360 (8th Cir. 2011); see also Johnson v. Carroll, 658 F.3d 819, 826 (8th Cir. 2011) ("[P]olice officers are often forced to make split-second judgments about the amount of force that is necessary in a particular situation.").

would be on notice that using his discretion to forgo the "window of opportunity" due to the unsafe conditions violated the subject's clearly established right. We, therefore, hold that even if Officers Percich's and Lively's repeated tasings of De Boise amounted to excessive force in violation of De Boise's Fourth Amendment rights, such rights were not clearly established at the time of the incident.

III.

Next, the Appellants argue that because Officers Percich and Maechling had received Crisis Intervention Team training along with the Taser training, the officers' failure to utilize such training denied De Boise of reasonable accommodations in violation of the ADA. The ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on an ADA claim in this context, a plaintiff must demonstrate "that he is a qualified individual with a disability denied participation in, or the benefits of, the services, programs, or activities of a public entity because of his disability." Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998). We have said that inquiry into whether officers reasonably accommodated the individual is "highly fact-specific and varies depending on the circumstances of each case, including the exigent circumstances presented by criminal activity and safety concerns" and that "we will not second guess [an officer's] judgments, where . . . an officer is presented with exigent or unexpected circumstances." Bahl v. Cnty. of Ramsey, 695 F.3d 778, 784-85 (8th Cir. 2012); see also Tucker v. Tennessee, 539 F.3d 526, 536 (6th Cir. 2009) ("[W]e rely on and expect law enforcement officers to respond fluidly to changing situations and individuals they encounter. Imposing a stringent requirement under the ADA is inconsistent with that expectation, and impedes their ability to perform their duties."); Hainze v. Richards, 207 F.3d 795, 801 (5th Cir. 2000) ("Title II does not apply to an officer's on-the-street responses to

-10-

reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.").

Important here, the officers received information that De Boise had assaulted his mother and observed De Boise's aggressive and irrational behavior and his continued non-compliance with their demands. Due to the unexpected and rapidly evolving circumstances, the officers were not required "to hesitate to consider other possible actions in the course of making such split-second decisions." Hainze, 207 F.3d at 801-02. Moreover, the "use of force" on De Boise was "not by reason of [De Boise's] disability, but because of [his] objectively verifiable misconduct." Bates ex rel. Johns v. Chesterfield Cnty., Va., 216 F.3d 367, 373 (4th Cir. 2000). Accordingly, the facts before us do not contemplate any violation of the ADA.

IV.

Accordingly, we affirm the district court's grant of summary judgment to the individual officers and St. Louis County.

BYE, Circuit Judge, dissenting.

I disagree the officers are entitled to qualified immunity for the tasing death of De Boise. Instead, I believe a jury should determine whether the officers violated De Boise's Fourth Amendment right to be free from excessive force by continuing to tase De Boise without attempting to handcuff him. I therefore respectfully dissent from Part II of the decision affirming the district court.

The court analyzes only the second prong of the qualified immunity analysis. See Fourte v. Faulkner Cnty., Ark., 746 F.3d 384, 387 (8th Cir. 2014) (noting two-

-11-

part test for qualified immunity). The court concludes the state of the law in 2008 would not have placed an officer on notice he must limit the use of his taser. I believe the law placed an officer on notice he could not continuously tase a suspect when safer alternatives were reasonably available to constrain De Boise in order to effectuate an arrest.

First, construing the facts in the light most favorable to De Boise, I would find a sufficient showing has been made to present to a jury whether the officers violated De Boise's constitutional rights by continuing to tase him until his eventual death. The use of a taser is not unlimited in scope when dealing with a suspect, even one who is actively resisting. De Boise disobeyed officers' orders and made some threatening moves. However, De Boise was not carrying a visible or concealed weapon, did not make advances at the officers, and was naked. A jury could conclude, with six armed officers at the scene, it was an unreasonable use of force to continuously tase De Boise rather than handcuff him during the time period De Boise was debilitated during and after each tase. Particularly because De Boise did not have shod feet or any other weapon, a jury could conclude the officers were unreasonable to not make further effort to handcuff De Boise, even if he were swinging his arms or kicking his legs.

Second, I would find the officers were put on notice in 2008 that continuously tasing a suspect until his death was unlawful. To determine whether an action was a clearly established constitutional violation, we look to the state of the law at the time of the incident, and the correct inquiry is whether it is clear to a reasonable officer that his conduct was unlawful. Shekleton v. Eichenberger, 677 F.3d 361, 366-67 (8th Cir. 2012). The test does not require "there be a case with materially or fundamentally similar facts," Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009), but rather merely whether "'it would be clear to a reasonable officer that

-12-

his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

"The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures." Brown, 574 F.3d at 499. A reasonable officer would know only reasonable force can be used to effect an arrest. Although tasing a suspect can be reasonable force in certain circumstances, tasing rises to a "significant level of force." McKenney v. Harrison, 635 F.3d 354, 364 (8th Cir. 2011) (Murphy, J., concurring). Even without a case decided on materially or fundamentally similar facts, a reasonable officer in 2008 would have known "the use of tasers requires sufficient justification for their use to be reasonable." Id. There are, and long have been, limits on officers tasing suspects. In Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993), we found an Eighth Amendment violation where a jailor applied a stun gun, and there were six or seven officers present, but the officers failed to "take advantage of [the inmate's] incapacitation to neutralize any perceived threat to their safety." We also noted, as relevant to the Eighth Amendment analysis, the officers failed to "remove, isolate, or restrain" the inmate. Id. In this case, the officers were on notice they should have attempted to handcuff De Boise as a safer alternative to tasing De Boise with fifty seconds of electrical shock in just over two minutes of time. It would be clear to a reasonable officer that failing to seize De Boise with reasonable force was unlawful.

Because the officers' actions are not protected by qualified immunity, I would remand this case for trial where a jury can determine whether it was reasonable the officers continued to tase De Boise until his death and seemingly without taking the available opportunities to handcuff and restrain De Boise.

_____

-13-