# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1522

_____

Shannon M. Peters,

*Plaintiff - Appellant,*

v.

Michelle Risdal; Lee Blanchard; Jonathan Hatfield; Carlos Lucero, Individually
and as Deputy Sheriffs/Jailers of Woodbury County, Iowa,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: October 6, 2014
Filed: May 26, 2015

_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Sioux City police officers arrested Shannon Peters for violation of a no-contact order and took her to the county jail. As the situation evolved, officers forcibly removed her clothing and required her to wear a paper jumpsuit because of concern that she might harm herself. Peters brought suit under 42 U.S.C. § 1983, claiming that she was unreasonably "strip-searched" in violation of the Fourth Amendment.

The district court[1] granted summary judgment in favor of the officers. The case proceeded to trial on other claims, and a jury returned a verdict in favor of the officers. Peters moved for a new trial, arguing that the district court should have instructed the jury on her unreasonable search claim, and the court denied the motion. Peters appeals the rulings on her Fourth Amendment search claim, and we affirm.

I.

As of May 2012, an Iowa court had entered an order requiring no contact between Peters and her boyfriend. While the order was in effect, Sioux City police officers stopped a speeding car that was driven by the boyfriend, and they found that Peters was a passenger. Police arrested her for violating the no-contact order and transported her to the Woodbury County Jail for booking.

Officers Michelle Risdal and Jonathan Hatfield were present at the booking counter when Peters was received. A security video showed the officers attempting to obtain information from Peters. After several minutes, Peters became agitated, began shouting at the officers, and refused to answer the remainder of the booking questions, including questions designed to determine whether she presented a risk of harm to herself. Sergeant Lee Blanchard then directed the officers to terminate the booking process, and Risdal escorted Peters to a holding cell.

Risdal entered the holding cell with Peters, and Hatfield and Blanchard remained in the hallway. Blanchard then asked Risdal whether Peters had answered questions designed to determine whether she presented a risk of suicide. Risdal repeated the questions, and Peters refused to respond, instead yelling "[w]hy the fuck would I want to hurt myself?"

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

At the time of her arrest, Peters was wearing a bathing suit under a shirt and sweat pants. After Peters's response to the officers' questioning, Risdal determined that Peters presented a risk of harm to herself, and told Peters to remove her clothing. Risdal says she was concerned that Peters could harm herself with the strings on her swimsuit. Peters refused to comply with Risdal's demand.

Blanchard looked into the cell and saw Peters facing Risdal in what he perceived to be an aggressive manner. Blanchard and Hatfield then entered the cell and told Peters to calm down and to follow Risdal's instructions. Peters persisted in her refusal to comply, and she shouted at Blanchard that he should not "get in [her] face." Blanchard then grabbed and turned Peters's hand, causing Peters to fall face down onto the bunk in the holding cell. Risdal and Hatfield assisted Blanchard in restraining Peters. Another officer, Carlos Lucero, entered the cell and assisted as well.

Peters continued to resist the officers, and Blanchard applied pressure with his right thumb below Peters's left ear in an effort to control her. The officers then placed a paper jumpsuit over Peters, and Risdal removed Peters's clothing. After Risdal removed Peters's clothing, the officers left Peters in the cell with the paper suit.

Peters sued the officers in the district court, alleging that she was subjected to an unreasonable search, that her right to freedom of speech was violated, and that the officers used excessive force. The district court granted summary judgment in favor of the officers on the unreasonable search claim, concluding that the forced removal of Peters's clothing did not violate her rights, and that if it did, then the officers were entitled to qualified immunity.

After a jury returned a verdict for the officers on Peters's remaining claims, Peters moved for a new trial, arguing as relevant here that the district court should have instructed the jury on Peters's unreasonable search claim. The district court

denied the motion, reasoning that the grant of summary judgment in favor of the officers justified the decision not to submit the claim to the jury.

## II.

Peters contends on appeal that the officers violated her Fourth Amendment rights when they forcibly removed her clothing in the holding cell. The officers maintain that the removal of Peters's clothing was justified by concern for her safety, given her displays of emotion and belligerence, and her refusal to answer questions designed to determine whether she posed a risk of suicide. Peters rejoins that her response to the officers' questions—asking rhetorically why she would want to hurt herself—should have been interpreted as a statement that she had no intention to harm herself. Therefore, she contends, a reasonable jury could have concluded that the officers had no reasonable grounds for their actions.

In assessing the reasonableness of the officers' conduct in a detention setting, we balance the need for the particular intrusion against the invasion of personal rights that it entails. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*.

Concern for a detainee's safety can justify requiring a detainee to undress and change into a paper suit. *Hill v. McKinley*, 311 F.3d 899, 903 (8th Cir. 2002). The officers here knew that Peters was visibly upset, and that she refused to respond to the medical screening questions designed to determine whether she posed a threat of harm to herself. A reasonable officer was not required to construe Peters's retort—"Why the fuck would I want to hurt myself?"—as a satisfactory declaration that she presented no risk of harm to herself. A reasonable officer is not required to give the most generous interpretation to a detainee's profane non-response in the midst of a jailhouse booking interview. Peters also refused to comply with Risdal's instruction

to change into the paper suit while the male officers were outside the holding cell, and she then acted aggressively toward the male officers when they entered. Under the circumstances, we conclude that it was objectively reasonable for the officers to believe that Peters presented a risk of harm to herself if she was permitted to retain the strings on her clothing.

As for the scope of the intrusion, requiring a detainee to disrobe in the presence of officers invades the privacy of the detainee to a significant degree. But in this case, the officers caused the intrusion only after lesser measures failed, and they minimized the intrusion. Peters was given more than one opportunity to answer the suicide questions before the officers directed her to disrobe. After Peters refused to respond, the officers gave her a chance to change into the paper suit in the presence of a female officer alone. When Peters refused to comply with Risdal's instruction to change into the suit, she was given another opportunity to change on her own when Blanchard and Hatfield entered the holding cell. Finally, when Peters became aggressive toward Blanchard, the officers restrained her face down on her stomach and covered her with the paper suit while Risdal removed her clothing. The manner in which the intrusion was conducted thus limited the extent to which Peters's body was exposed to the officers.

The place of the action—a holding cell for detainees, removed from public view—also supports the reasonableness of the officers' conduct. "The expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope.'" *Maryland v. King*, 133 S. Ct. 1958, 1978 (2013) (quoting *Bell*, 441 U.S. at 557). The intrusion here was conducted outside the presence of other inmates and involved more than one officer only because Peters refused to cooperate with the female officer who requested that Peters change clothes.

Balancing the considerations outlined in *Bell*, we agree with the district court that the officers acted reasonably, and that Peters's claim failed as a matter of law.

Because the district court correctly granted the motion for summary judgment, there was no reason to instruct the jury on this claim, and the motion for a new trial was properly denied.

*       *       *

The judgment of the district court is affirmed.

_____