# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1583

_____

Danelle Hollingsworth,

*Plaintiff - Appellant,*

v.

City of St. Ann; Robert McCallum, Police Officer, in his individual capacity only;
Johnny King, Police Officer; Joseph Mayberry, Correctional Officer,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 13, 2015
Filed: September 3, 2015

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Danelle Hollingsworth was detained for booking at the police station in St. Ann, Missouri, after an arrest for stealing wine coolers from a convenience store at a gas station. When she refused a directive from police and corrections officers to change from her street clothes into an orange jumpsuit, a police officer stunned her with a Taser device to encourage compliance.

Hollingsworth later brought this action against the police officer, two corrections officers, and the City of St. Ann, pursuant to 42 U.S.C. § 1983. She alleged that police officer Robert McCallum violated her rights under the Fourth Amendment by using excessive force when he stunned her with the Taser. She claimed that corrections officers Johnny King and Joseph Mayberry violated her constitutional rights by failing to intervene. She further asserted that the City was liable for the violations because its policy regarding the use of Tasers was unconstitutional.

The district court[1] granted summary judgment for defendants on all claims, concluding that the officers were entitled to qualified immunity, and that the City's Taser policy did not cause any potential violation of Hollingsworth's rights. Hollingsworth appeals, and we affirm. We conclude that although the actions of one or more officers might have been unreasonable, their conduct did not violate clearly established law at the time of the incident. We also agree with the district court that the City is not liable.

I.

The incident in question happened in the early morning hours of July 21, 2009. At about 1:30 a.m., Hollingsworth left a bar in St. Louis County, Missouri, and entered a gas station across the street. Hollingsworth had consumed several drinks, and admits she was "quite intoxicated," but "not severely intoxicated where [she] couldn't walk or focus." Hollingsworth took $7.38 worth of wine coolers from the station and left without paying for them.

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Shortly thereafter, police officers from St. Ann arrested Hollingsworth. According to Hollingsworth, she surrendered with her hands up. Officer Robert McCallum testified that she was belligerent, and that she was screaming and cursing at the officers. Hollingsworth has a "vague memory" of officers performing a pat-down search during the arrest.

Officers brought Hollingsworth to the St. Ann police station, where she was placed in a small processing room that was monitored by a video camera. Officer Mayberry brought an orange jumpsuit into the room. Officer King started the booking process by having Hollingsworth remove property from her person and fill out paperwork. According to Hollingsworth, she was compliant during this process.

King then instructed Hollingsworth to change into the orange jumpsuit. He informed her she was required to take off her bra but not her bottom underwear. Hollingsworth says she felt scared and asked to have a woman present while she changed clothes. After the officers left Hollingsworth alone in the processing room to change clothes, Hollingsworth sat on a concrete bench and refused to don the orange jumpsuit. A female dispatcher monitoring the video feed of the processing room informed officers that Hollingsworth was not changing clothes.

Officer McCallum then entered the room with a Taser, reiterated to Hollingsworth that she must change into the jumpsuit, and warned her that she would be tased if she did not change. Hollingsworth waived a finger at McCallum and said something to the effect that "you better not tase me." McCallum then left the room and closed the door.

After the dispatcher watching the video feed reported that Hollingsworth still was not changing into the jumpsuit, McCallum re-entered the room and deployed the Taser on Hollingsworth. He shot one barb into her upper chest and one into her shoulder. McCallum applied energy through the Taser on Hollingsworth for five

seconds. During this interval, McCallum also touched the end of the Taser onto Hollingsworth's inner thigh. After the first application, McCallum stopped for five seconds and told Hollingsworth to change clothes. She replied by directing an expletive at McCallum, and McCallum then applied another five seconds of energy through the Taser.

Hollingsworth testified she suffered "excruciating pain . . . like something was being . . . shocked through [her] legs" when she was tased. Two days after the incident, Hollingsworth continued to suffer leg spasms. She visited a hospital, where doctors prescribed muscle relaxants.

In July 2009, the City of St. Ann had a written policy on "Use of Stun Type Device." The policy stated that stun devices "shall be applied to [a] subject until resistance has ceased, or the subject complies with officer's commands, and the subject is no longer a threat." The policy provided that "[b]ecause a handcuffed, or restrained subject can still be noncompliant, or even a substantial threat, the use of a Stun Device may be permissible as discretion dictates." Sergeant Sam Barrale, who trained McCallum and others on the use of Tasers, testified that the City's policy authorized the use of a Taser when an officer's safety is threatened by an individual, including when a threat is foreseeable and could be prevented by use of the stun device. Barrale also testified that a Taser is not to be used for "punishment" or "coercion."

Hollingsworth brought this action pursuant to 42 U.S.C. § 1983 against McCallum, King, Mayberry, and the City of St. Ann, alleging, as relevant on appeal, that they violated her Fourth Amendment right to be free from excessive force. The district court granted summary judgment for the defendants. The court ruled that McCallum, King, and Mayberry were entitled to qualified immunity because it was not clearly established at the time of Hollingsworth's arrest that a use of force that resulted in only *de minimis* injury could constitute an unreasonable seizure based on

an excessive use of force. The court dismissed the claim against the City on the ground that the City's policy on use of stun devices did not cause McCallum to deploy the Taser. We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party.

## II.

The parties agree that the conduct of the officers at issue here was governed by the Fourth Amendment. Their submission is consistent with our precedents, which have applied the Fourth Amendment when resolving excessive force claims arising during transportation, booking, and initial detention of recently arrested persons. *See Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (citing cases); *cf. Kingsley v. Hendrickson*, No. 14–6368, 2015 WL 2473447, at *13 (U.S. June 22, 2015) (Alito, J., dissenting). An officer's use of force violates the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances of the particular case, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In § 1983 actions, qualified immunity shields government officials from suit unless their conduct violated a clearly established right of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In a series of recent decisions, the Supreme Court has emphasized that for a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question "beyond debate." *City & Cnty. of S.F., Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation omitted); *see Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014); *Stanton v. Sims*, 134 S. Ct. 3, 4-5 (2013); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

"When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (alteration in original) (internal quotation omitted).

Hollingsworth contends that McCallum violated clearly established law, because there was no justification for the use of any force against her in the holding cell. She points to *dicta* in *Agee v. Hickman*, 490 F.2d 210 (8th Cir. 1974), that the court—by upholding a particular use of force—did "not mean to condone . . . the use of any force by officers simply because a suspect is argumentative, contentious or vituperative." *Id.* at 212. She cites the court's statement in *Feemster v. Dehntjer*, 661 F.2d 87 (8th Cir. 1981), that "[t]here is no occasion for the use of any force against a prisoner who quietly submits." *Id.* at 89. And she draws on the conclusion in *Shannon v. Koehler*, 616 F.3d 855 (8th Cir. 2010), that where a citizen was not suspected of committing a crime, did not resist arrest, and did not threaten anyone, we could not say that "a reasonable officer . . . would have felt the need to use any force." *Id.* at 863. Hollingsworth also relies on *Hickey v. Reeder*, 12 F.3d 754 (8th Cir. 1993), an Eighth Amendment case in which the court held that the use of a stun gun on a nonviolent inmate solely to enforce a "housekeeping order" to sweep his cell violated the inmate's right to be free from cruel and unusual punishment. *Id.* at 759.

These cases are inapposite because they involve or contemplate situations where there was no justification for the use of *any* force. Here, Hollingsworth repeatedly refused to change from her street clothes into an orange jumpsuit when she was booked into the jail. The officers had a legitimate safety reason for requiring the change of clothes. King testified that it was the city's policy to require all prisoners to change into a jumpsuit. McCallum testified that it was important for arrestees to change into jumpsuits to "insure safety of themselves and other people in the facility," and to allow officers to search for contraband. Recent arrestees may have contraband or weapons concealed in their street clothes, and introduction of such objects into the jail could threaten the safety of officers, detainees, or others. A

-6-

requirement to change clothes is a reasonable means to maintain institutional safety and to preserve internal order. *See Stanley v. Henson*, 337 F.3d 961, 966 (7th Cir. 2003); *cf. Kelsey v. County of Schoharie*, 567 F.3d 54, 64 (2d Cir. 2009) ("A clothing exchange is a common practice in jails and prisons as is the need for corrections officers to be vigilant at all times."). After Hollingsworth was recalcitrant, it was not unreasonable for officers to use *some* force to cause her to wear the orange jumpsuit.

The issue in this case is whether McCallum, having justification to use *some* force to cause Hollingsworth to change into an orange jumpsuit, violated her clearly established rights by deploying the Taser rather than employing other means such as physical restraint and forcible removal of clothing. *Cf. Peters v. Risdal*, 786 F.3d 1095 (8th Cir. 2015). As we have explained in other decisions, it was an open question at the time of this incident in July 2009 whether a plaintiff must demonstrate greater than *de minimis* injury to establish an excessive force claim under the Fourth Amendment. *Chambers*, 641 F.3d at 904; *see also Peterson v. Kopp*, 754 F.3d 594, 601 (8th Cir. 2014); *Bishop v. Glazier*, 723 F.3d 957, 962 (8th Cir. 2013). The district court, citing a concession by Hollingsworth, concluded that her injuries were *de minimis*, and she does not dispute that point on appeal. Therefore, Hollingsworth can prevail only if it was clearly established in July 2009 that use of a Taser that caused *de minimis* injury violated the Fourth Amendment.

Hollingsworth's claim founders on our decision in *LaCross v. City of Duluth*, 713 F.3d 1155 (8th Cir. 2013). *LaCross* held that it was not clearly established in 2006 that an officer's use of a Taser that resulted in no lasting physical injuries or injuries requiring medical care nonetheless could be unreasonable because Tasers caused "excruciating pain without lasting physical effects." *Lacross*, 713 F.3d at 1157-58. This court held that despite the Taser's unique capability to cause high levels of pain without long-term injury, "we have not categorized the Taser as an implement of force whose use establishes, as a matter of law, more than *de minimis* injury." *Id*. at 1158. We thus concluded it was not clearly established that an

officer's use of a Taser, resulting in only *de minimis* injury, was an unconstitutional use of force. *Id.* The law was not materially different in July 2009, so McCallum is entitled to qualified immunity. "'[A] reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment.'" *Bishop*, 723 F.3d at 962 (quoting *Chambers*, 641 F.3d at 908).

Hollingsworth also invokes *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009), where this court ruled that an officer violated clearly established rights in 2005 by using a Taser against "a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." *Id.* at 493, 499. The officer in *Brown* tased the plaintiff as she sat in the passenger seat of a car and spoke with a 911 operator on her cell phone during a traffic stop. *Id.* at 494, 496. *Brown*, however, did not address whether the plaintiff's injuries were *de minimis*—the plaintiff alleged that she suffered bruises and welts on her arms, problems sleeping, difficulties focusing, and anxiety-related symptoms when she saw police after the incident, and that she was prescribed anti-anxiety medication. *Id.* at 495. *Brown* thus had no occasion to consider whether it was clearly established that *de minimis* injury could sustain an excessive force claim under the Fourth Amendment, and *LaCross* distinguished *Brown* on precisely that basis. 713 F.3d at 1158 n.4.

Qualified immunity also shields King and Mayberry from suit on the claims alleging an unreasonable failure to intervene. This court had established by July 2009 that "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). To establish a failure to intervene claim, however, the plaintiff must show that the "officer observed or had reason to know that excessive force would be or was being used." *Id.* Here,

because it was not clearly established that McCallum's actions constituted excessive force, a reasonable officer was not on fair notice that his failure to intervene when McCallum deployed the Taser violated Hollingsworth's Fourth Amendment rights.

## III.

Hollingsworth separately challenges the district court's conclusion that the City of St. Ann was not liable for any violation of her Fourth Amendment rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The district court ruled that even assuming McCallum acted unreasonably, the City's Taser policy did not cause McCallum to use the Taser on Hollingsworth. The court reasoned that McCallum did not act pursuant to City policy, because he testified that he used the Taser in order to ensure compliance with a safety protocol, and the policy did not provide for use in that situation. We affirm for related reasons: the City's Taser policy was not unlawful on its face, and Hollingsworth did not present evidence that the City was deliberately indifferent to her Fourth Amendment rights.

A municipality may be liable under § 1983 where "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. A municipality, however, cannot be held liable solely because it employs a tortfeasor. *Id*. Two of the circumstances in which municipality liability can arise warrant discussion here: First, where a particular municipal action or policy "itself violates federal law, or directs an employee to do so," and second, where "an official policy is lawful on its face and does not compel unconstitutional action" but "municipal action has led an employee to violate a plaintiff's rights," and that action was "taken with 'deliberate indifference' as to its known or obvious consequences." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007) (en banc) (quoting in part *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404, 407 (1997)).

The City's policy on the use of a "stun type device" was not unlawful on its face and did not compel unconstitutional action. The written policy allowed officers to use a Taser in response to a threat, and training officer Barrale said it permitted use when a detainee presented a non-immediate, but "foreseeable" threat. But both the written policy and Barrale's oral supplement specified that officers were vested with discretion about when to deploy the Taser. Barrale testified that the City's policy prohibited the use of the Taser for "punishment" or "coercion," and nothing in the policy directed McCallum to use a stun type device to cause a detainee to change from street clothes into an orange jumpsuit. The policy allowed for discretion and was not unlawful on its face. *See Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008).

Hollingsworth also has not made a submissible case that the City acted with deliberate indifference to her Fourth Amendment rights by failing to prevent McCallum from using the Taser when a detainee presented no immediate threat. Assuming for the sake of analysis that McCallum's use of the Taser was unreasonable, Hollingsworth presented no evidence of a pattern of such use by officers in St. Ann. While a single constitutional violation arising out of a lack of safeguards or training may be sufficient to establish deliberate indifference where the need for such safeguards or training is "obvious," a municipality "cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Szabla*, 486 F.3d at 393. As it was not clearly established in July 2009 that force resulting in only *de minimis* injury could violate the Fourth Amendment, the City did not act with deliberate indifference by failing to train its officers that use of a Taser in these circumstances was impermissible.

\* \* \*

The judgment of the district court is affirmed.

-10-

KELLY, Circuit Judge, concurring.

I concur in the decision to affirm the judgment of the district court. I write separately for three reasons. First, to state clearly that, in my belief, Officer McCallum acted unreasonably in tasing Hollingsworth. Second, to highlight my concern that Hollingsworth did not, in fact, concede to the district court that she sustained merely *de minimis* injuries. And third, to explain that while I believe that at the time this event occurred in July 2009, it was clearly established that it was unlawful to use a Taser on an unarmed, secured, and nonthreatening misdemeanant, I recognize that I am constrained by this court's decision in LaCross, and thus I concur.

Unreasonable use of force

The majority allows that "the actions of one or more officers might have been unreasonable" and does not elaborate further—instead reaching its decision on the second prong of the qualified immunity test. In my view Officer McCallum's actions were unreasonable. The "proper application [of the test for reasonableness] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). As to the "severity of the crime," Hollingsworth was arrested for stealing $7.38 worth of wine coolers from a gas station, a misdemeanor. Mo. Rev. Stat. § 570.030 (2015). At the time of the tasing she was neither "attempting . . . flight" nor an "immediate threat to the safety of . . . others." She had been subjected to a pat-down search during her arrest and was contained in a jail cell. Officer McCallum himself testified that at no point during his encounter with Hollingsworth in the jail cell did he fear for his safety. Hollingsworth was compliant during the booking process—she testified that she removed property from her person and filled out paperwork without incident.

-11-

At the time of her tasing she was sitting on a bench in her cell. I recognize that a prisoner's refusal to change into a jumpsuit may create a security issue, but the language of the Graham test requires an "immediate threat" to safety, which was not present here. Further, while a given situation may justify the use of some force, that does not foreclose a finding that the force employed was nevertheless unreasonably excessive. Each of these factors weighs in favor of the conclusion that Officer McCallum acted unreasonably in using his Taser on Hollingsworth.

The City of St. Ann's official Taser policy provides that "[t]he charge from the unit shall be applied to the subject until resistance has ceased, or the subject complies with the officer's commands, and the subject is *no longer a threat*. Any further use is not necessary or permissible." (Emphasis added). Training Officer Barrale testified that the city's policy does not allow the use of a Taser for "punishment" or "coercion." Despite this fact, Officer McCallum used his Taser—a weapon designed to immobilize its victim's muscles—on Hollingsworth to force her to change into her clothes—an act that requires the use of one's muscles. After the first tasing, Hollingsworth shouted "Fuck you!" and Officer McCallum immediately used his Taser on her a second time. In my view, the second tasing can be viewed as nothing other than punishment for Hollingsworth's insolence. See Cook v. City of Bella Villa, 582 F.3d 840, 859–60 (8th Cir. 2009) (Shepherd, J., dissenting) (arguing that it was unreasonable to "discharge [a] Taser simply because of insolence" (quotation omitted)).

Officer McCallum made no attempt to resolve the situation with Hollingsworth in a non-violent manner. He did not assure Hollingsworth that the only person watching her change was a female officer, he did not answer her requests for a female officer to be present, and he did not allow her time to cool down or sober up. The amount of time that passed between his initial order to Hollingsworth to change out of her clothes and his use of the Taser was a matter of minutes. The second time he entered her cell he gave no warning and instead deployed his Taser three seconds

after entering. From the perspective of a reasonable officer on the scene, this was an unreasonable and excessive use of force.

### *De minimis* concession

As the court notes, the district court summarily concluded that Hollingsworth's injuries were *de minimis* by citing to a "concession" made by Hollingsworth on this point. The district court's citation points to a page of Plaintiff's Amended Memorandum in Opposition to Defendant's Motion for Summary Judgment, stating:

> The pain was at a 10 on a ten scale, and the officer applied two ten second applications. To Plaintiff that amount is excessive under a reasonable person standard. But Plaintiff acknowledges that the Eighth Circuit does not believe a taser causes more than *de minimis* injury, LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013). To the extent the Eighth Circuit has concluded that getting tased for two five second jolts is "no big deal," Plaintiff makes a good faith argument for modification of the law.

I question the characterization of this paragraph as a "concession" that the injuries Hollingsworth received from the Taser were merely *de minimis*. Acknowledging that Eighth Circuit precedent may construe her injuries as *de minimis* does not constitute a concession that Hollingsworth agreed her injuries were *de minimis*, particularly when she goes on to argue for a change in the law.

Further, in LaCross the plaintiff "did not seek any treatment for injuries related to the Taser application, nor [was he] diagnosed with any injuries or conditions related thereto." LaCross, 713 F.3d at 1157. Even if we take LaCross to be a declaration that Tasers do not per se cause greater than *de minimis* injuries, the argument remains that Hollingsworth experienced greater than *de minimis* injuries as a result of being tased in this instance. The pain from the two tasings caused Hollingsworth to urinate herself. Following the incident she experienced leg spasms

-13-

serious enough that she visited a hospital and was prescribed muscle relaxants. I also note that the officer who employed the Taser against Hollingsworth described the pain as a "ten" on a scale from one to ten. Our case law provides several examples of instances in which the use of a Taser resulted in more than *de minimis* injuries. See, e.g., De Boise v. Taser Int'l, Inc., 760 F.3d 892, 896 (8th Cir. 2014) (resulting in death); McKenney v. Harrison, 635 F.3d 354, 358 (8th Cir. 2011) (resulting in death); Mahamed v. Anderson, 612 F.3d 1084, 1086 (8th Cir. 2010) (resulting in incontinence, impotence, and nerve damage).

It appears from her briefing, however, that Hollingsworth has abandoned any argument that her injuries were above and beyond the injuries alleged in LaCross, and thus I agree with the court that she is limited by our ruling in that case.

Clearly established prohibition

Finally, I write to express my belief that at the time of Hollingworth's tasing in July 2009, it was clearly established that it was unlawful to use a Taser on an unarmed, secured, and nonthreatening misdemeanant. Were I not constrained by precedent, I would decline to extend qualified immunity to Officer McCallum. See LaCross, 713 F.3d at 1157–58.

In Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009), this court found that it was unreasonable for the officer to have deployed his Taser and held that:

> the law was sufficiently clear [in 2005] to inform a reasonable officer that it was *unlawful* to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator.

-14-

(Emphasis added). The court determined that the law was clear because "[t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures." Id. "Moreover, it is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of officers or the public." Id. (citing Casey v. City of Fed. Heights, 509 F.3d 1278 (10th Cir. 2007) (finding that it was not reasonable for officer to employ Taser under clearly established law)).

It is true, as the court points out, that Brown did not analyze whether the injuries received by the plaintiff in that case were more than *de minimis*, but I do not believe this is a reason to ignore its precedential value. Indeed, in Shekleton v. Eichenberger, 677 F.3d 361, 367 (8th Cir. 2012) the court followed Brown's precedent rather than rule it had been invalidated post-Chambers. The court ruled that:

> at the time of the incident [in Brown], we had not yet had an opportunity to determine whether an officer's use of a taser on a nonviolent, nonfleeing misdemeanant was an excessive use of force. However, the right to be free from excessive force dates back to the adoption of the Bill of Rights of our Constitution, as it is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person . . . .

Shekleton, 677 F.3d at 367 (internal quotations omitted).

Accordingly, the court followed the decision in Brown, finding that the officer's use of a Taser was unlawful, and determined that "the general law prohibiting excessive force in place at the time of the incident was sufficient to inform an officer that use of his taser on a nonfleeing, nonviolent suspected misdemeanant was unreasonable, even though [prior to Brown,] we did not have a case specifically addressing officer taser use." Shekleton, 677 F.3d at 367 (citing

-15-

Brown, 574 F.3d at 499–500). While the decision in Shekleton was reached after our decision in Chambers, it concerned pre-Chambers events. The Shekleton decision similarly does not use the words "*de minimis*," but again I think that is not a reason to ignore its precedential weight. As recently as last year this court re-confirmed that "non-violent, non-fleeing subjects have a *clearly established* right to be free from the use of tasers." De Boise, 760 F.3d at 897 (emphasis added) (citing Brown, 574 F.3d at 499–500)). See also Carpenter v. Gage, 686 F.3d 644, 652–53 (8th Cir. 2012) (Smith, dissenting) (reiterating that "'an officer's use of a taser on a non-violent, nonfleeing misdemeanant was an excessive use of force' in violation of *clearly established* law," (quoting Shekleton, 677 F.3d at 367) (emphasis added) and holding that the suspect's flight risk and the safety risk to the officers and others present are considerations when determining the justified level of force); Bell v. Kansas City Police Dept., 635 F.3d 346, 347 (8th Cir. 2011) (holding that whether Bell was disobeying orders to show his hands and get out of his truck was material to determining the objective reasonableness of the officer's use of a Taser on him and citing Brown, 574 F.3d at 496–98, for the proposition that an officer's use of a Taser was not objectively reasonable when the "passenger posed minimal security threat and was not resisting arrest or attempting to flee, officer was not faced with split second decision, and circumstances did not constitute tense, uncertain, and rapidly evolving situation").

Each of these cases stands for the proposition that a reasonable officer would have known that the use of a Taser in circumstances similar to the one at present was clearly established as unlawful: Brown concerned events that took place in 2005, and Shekleton and DeBoise concerned separate events that took place in 2008. Indeed, just five months after the incident in the present case a district court in this circuit concluded that the use of a Taser in 2006 constituted unreasonable force, reasoning:

> Even if a taser does not require hospitalization or cause quantifiable injuries, it does cause extreme pain, and such pain may support a claim for excessive force. . . . The Eighth Circuit has noted that "extreme pain

-16-

can be inflicted with little or no injury." [Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993)] Just as it would be unacceptable to "permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury," [Hudson v. McMillian, 503 U.S. 1, 9 (1992)], it would also be unacceptable to permit arresting officers to use any degree of force, no matter how painful or intrusive, so long as it did not inflict some arbitrary quantity of injury.

Orsak v. Metro. Airports Comm'n Airport Police Dep't, 675 F. Supp. 2d 944, 958–59 (D. Minn. Dec. 14, 2009).

These holdings, then, must be reconciled with Chambers, which holds that prior to 2012, arrestees did not have a clearly established right to be free from unreasonable force that resulted in merely *de minimis* injuries.  Rather than ignoring these cases, I read Brown and Shekleton as support for the view that a Taser, when effectively used, typically results in more than *de minimis* injuries.  Prior to Chambers in 2011, this court had a line of cases holding that "the necessary level of injury is actual injury." Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995).  In these cases we found that such injuries as bruised knees and elevated blood pressure, id., "posttraumatic stress disorder," id., and a "single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf," Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999), could support a finding of excessive force. See also Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) (ruling that an officer grabbing plaintiff's wrist and holding him against a door could constitute unreasonable force).

Another line of cases required that the unreasonable force resulted in more than *de minimis* injuries, and in these cases, both before and after Chambers, we found that a wide range of arguably-minor injuries met the *de minimis* threshold.  See, e.g., Davis v. White, --- F.3d --- (8th Cir. 2015) ("a concussion, scalp laceration, and bruising with almost no permanent damage" is not *de minimis*); Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (lacerations above the eye resulting in a hospital

visit but requiring no stitches is not *de minimis*); Irving v. Dormire, 519 F.3d 441, 448 (8th Cir. 2008) (blow to the face resulting in difficulty breathing is not *de minimis*).

> Meanwhile, a Taser
>
> uses compressed nitrogen to propel a pair of "probes"—aluminum darts tipped with stainless steel barbs connected to the [taser] by insulated wires—toward the target at a rate of over 160 feet per second. Upon striking a person, the [taser] delivers a 1200 volt, low ampere electrical charge . . . The electrical impulse instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless.

Mattos v. Agarano, 661 F.3d 433, 443 (9th Cir. 2011) (quotation omitted). It is difficult to make a meaningful distinction between the aforementioned injuries and those injuries suffered by Hollingsworth. See Cook 582 F.3d at 859–60 (Shepherd, J., dissenting) (stating that if a plaintiff is required to "make a showing of some minimum level of injury in order to make out a claim for excessive force, the pain and puncture marks inflicted by the taser are sufficient to do so").

The Brown court was well aware that "[n]ot every push or shove . . . violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396 (1989) (quotation omitted). The Shekleton court reached its decision after Chambers had been published. The court in those cases nevertheless concluded that the use of a Taser was a constitutional violation.[2] Either the court concluded that the Taser caused more than *de minimis* injuries in each instance *or* it believed that a modern technological

---

[2]This court notes that the plaintiff in Brown "alleged that she suffered bruises and welts on her arms, problems sleeping, difficulties focusing, and anxiety-related symptoms when she saw police after the incident, and that she was prescribed anti-anxiety medication." See *supra* p. 8. If the implication is that these symptoms constitute a greater than *de minimis* injury while Hollingsworth's tasing, which resulted in her extreme pain and required a visit to the hospital for muscle relaxants to treat her leg spasms, does not, I cannot agree.

weapon designed for the *particular purpose* of causing excruciating pain without permanent injury was somehow in a category apart from the more traditional "pushes and shoves," such that the Taser did not fit within the regular *de minimis* injury framework. See Hickey, 12 F.3d at 757 (describing the effects of a Taser as "torment without marks"); see also McKenney v. Harrison, 635 F.3d 354, 361, 364 (8th Cir. 2011) (Murphy, J., concurring) (referring to the "unique nature of this type of weapon" and warning that "[t]he Supreme Court refused to let 'police technology . . . erode the privacy guaranteed by the Fourth Amendment' in Kyllo v. United States, [533 U.S. 27, 34 (2001)], and the particular factual circumstances in which a taser has been used must be examined in the context of Fourth Amendment protections against excessive force.").

In addition to the protections provided under the Fourth Amendment, a reasonable officer in 2009 could also have taken guidance from our decisions regarding use of a Taser in the prison context under the Eighth Amendment to understand that using a Taser on an individual in Hollingsworth's situation was unreasonable. See Hickey v. Reeder, 12 F.3d 754, 756, 759 (8th Cir. 1993) (concluding that the use of a Taser on a prisoner who refused to sweep his cell was "an exaggerated and grossly disproportionate response to his misconduct" and ruling that "[w]e have not found, and hope never to find, a case upholding the use of this type of force on a nonviolent inmate to enforce a housekeeping order."); see also Smith v. Conway County, Ark., 759 F.3d 853, 859 (8th Cir. 2014) (holding that the use of a Taser on a prisoner who refused to get up from his bunk was not a "constitutionally permissible option" (citing Brown, 574 F.3d at 497–98 (denying qualified immunity when the plaintiff's "principal offense . . . was to disobey the commands to terminate her call to the 911 operator"))).

While I find this court's decision in LaCross to be at odds with much of our precedent outlined here, I recognize that its factual similarity to the case at hand, combined with the plaintiff's failure to plead specialized injury, forecloses the

conclusion that Hollingsworth suffered greater than *de minimis* injuries.  Thus, I concur in the decision of the court.

_____